986 So.2d 146 (2008)
NEW ORLEANS ELECTRICAL JOINT APPRENTICESHIP AND TRAINING COMMITTEE
v.
Ethan CRAWFORD.
No. 07-CA-964.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
Julie Richard-Spencer, Attorney at Law, Metairie, LA, for Plaintiff/Appellee.
Willard J. Brown, Sr., Attorney at Law, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS, and GREG G. GUIDRY.
MARION F. EDWARDS, Judge.
The matter before us in this appeal involves a dispute between plaintiff/appellee, New Orleans Electrical Joint Apprenticeship *147 and Training Committee ("Committee"), and defendant/appellant, Ethan Crawford ("Crawford"), who was a participant in the Journeyman program administered by the Committee. It is a suit for breach of contract against Crawford for failure to meet the requirements of the program, causing notes executed by Crawford for student loans to become due and payable. For reasons that follow, we affirm.
The Committee is an unincorporated association established in Jefferson Parish. The Committee is sponsored by Local Union # 130 of the International Brotherhood of Electrical Workers and the South Louisiana Chapter, Inc. of the National Electrical Contractors Association. The program was instituted to provide training for qualified individuals to learn the trade of electrician.
The rules governing electrical apprentices provide that the apprentice is bound by a legal indenture agreement to serve for a specific term with a view of learning an art or trade. The Committee is the authority which oversees the apprenticeship program for training of eligible candidates, and also provides loans to apprentices for training, with the understanding that the apprentice will meet certain obligations. The stated purpose of the program is to train a participant to become a qualified journeyman.[1]
Crawford was a participant in this program and executed an Apprentice Agreement in which he agreed to terms of 8000 hours/five-year minimum apprenticeship, and 180 hours of related instruction per year. To pay for the training, Crawford executed five Apprentice Scholarship Loan Agreements dating from May of 1996 until September of 2000, for a total amount of $6,690. By the terms of the agreement, Crawford was to complete the five-year training, and thereafter, to work for an employer in the electrical industry that was affiliated with the program. Crawford was to receive a credit applied to his debt for each "journeyman working year" with one or more employers who are obligated to make contributions on the apprentice's behalf to the Committee. If Crawford worked for a contributing employer for the five years, his debt would be extinguished completely.
The original lawsuit was filed against Crawford for breach of the agreement in December of 2001. In the petition, the Committee alleged that Crawford breached his agreement by not completing his fifth year of training, and by becoming employed by an employer in the electrical industry that is not a contributor to the program.
In his answer and reconventional demand, Crawford admitted he did not complete the fifth year of training. Crawford asserts the Committee granted him a leave of absence. However, the Committee refused to grant an extension of the leave of absence, causing an improper termination of his indenture agreement on the basis of non-compliance.
The matter was set for trial. However, before the trial date, Crawford filed a notice of removal to Federal Court on November 29, 2004. In Federal Court, Crawford alleged his federally protected rights under the Civil Rights Act, the Family Medical Leave Act of 1993, and the Fair Labor Standard Act were at issue in the dispute, based on the claims made in his reconventional demand. The Committee filed a counter-motion to remand the matter *148 back to the State Court which was granted by the Federal Court on January 31, 2005.
After a trial on the merits in State Court, the trial court rendered a judgment on May 6, 2005 in favor of the Committee, awarding the amount of the unpaid scholarship loan, $6,690 plus interest, costs and attorney's fees. Crawford filed a pro se motion for appeal from that judgment. The motion was granted and bond was set at $9,198.75 on June 1, 2005.[2] Crawford sought an extension of time to obtain the bond on July 18, 2005. On July 21, 2005, the trial court granted the motion and gave Crawford an extension until September 12, 2005. However, before that deadline, Hurricane Katrina struck the area, and it does not appear the bond was posted. On May 2, 2006, Crawford filed a pro se motion asking for an extension of the appeal process for six months. The Committee opposed that motion. The trial court granted the motion on May 2, 2006 extending the appeal process until November 3, 2006.[3]
Crawford filed a pro se motion for a new trial, which was denied by the trial court. Crawford also filed a second pro se motion raising the same issues which appears to be a request for nullification of the judgment on the merits. That motion was also denied. No appeals were taken from either of these two judgments.
Although the procedural history of this matter has been complicated by the fact that Crawford appeared in proper person in the trial court, and delays due to Hurricane Katrina have caused a disruption in the process, it appears that Crawford's appeal of the judgment on the merits has never been dismissed and is still viable. Accordingly, we will address the issues presented by the appeal as they relate to the May 6, 2005 judgment.
At the trial on the merits, the court heard testimony from Mortimer Branighan, Jr. ("Branighan"), the director of the Committee. Branighan confirmed that Crawford applied for, and was accepted into, the program. The rules and requirements were explained to Crawford, and he signed the necessary documents to enter the program in 1996. Crawford also signed promissory notes for scholarship loans annually during the five years of his tenure in the program. Crawford attended the classroom training and was an excellent apprentice. Crawford complied with the on-the-job training requirements as outlined in the program's standards.
However, in 2000 Crawford came to Branighan with a complaint about the local union accepting intermediate journeymen into the local as part of their organizing efforts. Crawford felt the practice was unfair to him as an individual with more skills and training. At the time, Crawford was working for Walter Barnes Electric ("Barnes") and felt that he should be given a pay raise. Branighan explained that Barnes was only obligated to pay the rate outlined under the collective bargaining agreement.
Branighan also testified that Crawford showed him photos of the home he was renovating and indicated that his employer had given him time off to complete the work. Branighan stated that he cautioned Crawford to be sure he had worked the hours necessary for completion of the apprenticeship program.
Shortly after that conversation, Crawford was laid off due to a reduction in work *149 force at Barnes. Crawford signed in at the hiring hall as required. He requested, and was granted, a two-week leave of absence. Crawford returned to the work hall two weeks later and was issued a work assignment with Frischhertz Electric. Crawford was terminated from that assignment for absenteeism and tardiness on February 12, 2001. Further, Crawford missed four classes, the maximum allowed for the 2000/2001 school year, and was placed on attendance probation.[4]
As a result of the termination and the attendance probation, Crawford was summoned to appear before the Committee at the regular March 2001 meeting. Branighan could not recall what occurred at that meeting. However, a copy of the minutes contained in the record indicates that Crawford told the Committee he had personal business, which required his attention, and this affected his on-the-job and related training attendance. He denied being tardy, although he did admit to missing some time at work. Ultimately, the Committee gave Crawford a warning and informed him his progress would be closely monitored. The Committee also informed Crawford that any further infractions would result in the cancellation of his agreement. A letter dated March 5, 2001 was sent to Crawford listing his infractions and informing him that "failure to fully comply with the above or any further infractions of the NOEJATC `Rules to Govern Electrical Apprentices' will result in you being penalized additional On Job Training hours as determined by the Committee or cause your indenture agreement to be canceled."
Crawford did not appear for training placement nor sign the out-of-work list from March 1, 2001 until March 29, 2001. Further, he did not request a leave of absence either orally or in writing. However, Crawford did attend classes during that time.
The Committee summoned Crawford to the April 5, 2001 meeting. At the meeting, Crawford made some non-specific references to needing some time off for personal matters. The minute entry of that meeting contained in the records verifies that Crawford referred to "personal problems" that prevented him from reporting for possible on-the-job assignments. As a result of that meeting, the Committee sent a letter by certified mail, dated April 9, 2001, informing Crawford that he must report and make himself available for possible on-the-job assignments "no later that three (3) days after receipt of this notice." When Crawford did not comply with that directive, the Committee mailed a second certified letter dated April 17, 2001. That letter notifies Crawford that he would no longer "be allowed to participate in or continue attending 2000-2001 5th Year Related Training classes. Also, you will not receive credit for any classed attended, effective this date, without expressed consent of the New Orleans Electrical Joint Apprenticeship & Training Committee." Branighan explained this meant that Crawford would have to repeat the fifth-year curriculum. At this point, Crawford was not reporting for on-the-job assignments, and he was suspended from classes.
Crawford responded to the letters with a certified letter to the Committee dated April 25, 2001, in which he stated that he informed the board at the April 5 meeting that he needed "to remain on leave of absence from work due to personal family problems." He also requested a copy of *150 the minutes of that meeting and asked for an explanation as to why his leave of absence had been revoked.
The Committee summoned Crawford to the May 2001 meeting. The summons notice was sent in a certified letter, and stated that "[f]ailure on your part to respond to this notice will be construed as your [sic] no longer being interested in Electrical Apprenticeship and your indenture agreement could be canceled for noncompliance."
Crawford attended the meeting and informed the Committee that the unspecified personal problems continued, making it impossible to report for on-the-job work assignments. The Committee informed Crawford that his failure to request a leave of absence obligated him to report according to the agreement and the rules. The Committee also informed Crawford that the minutes of the Committee meetings are confidential. Thus, his request for a copy of the minutes of the prior meeting would not be granted.
On May 9, 2001, the Committee sent another certified letter to Crawford, acknowledging his correspondence of April 25 and informing him that there is nothing in the Committee records to show that he requested, or was granted a leave of absence. The letter also informed him of the confidentiality of the meetings. Finally, the notice informed Crawford that it was mandatory that he report and make himself available for full-time, on-the-job training opportunities within fourteen days of receipt of the notice. The notice also stated that "[f]ailure to fully comply with the above, or any further infractions of the NOEJATC `Rules to Govern Electrical Apprentices' will result in immediate cancellation of your indenture agreement for noncompliance." When Crawford failed to heed the directive in that notice, his indenture agreement was cancelled effective June 4, 2001.
Branighan stated that Crawford was an excellent apprentice and the Committee did not want to terminate his indenture agreement. Branighan had several conversations with Crawford during this time about his personal problems and his absences. Branighan testified that he tried to explain to Crawford that his actions were putting his continuation in the apprentice program in jeopardy. Branighan encouraged Crawford to abide by the rules and be more forthcoming with the Committee. During one of these conversations in May of 2001, Crawford told Branighan there was some illness in the Crawford family that did not allow him to work on a regular basis. Branighan explained to Crawford that only the Committee had the authority to grant a leave of absence and encouraged Crawford to inform the Committee of the problems. Crawford did not take Branighan's advice and, further, refused to allow Branighan to speak to the Committee for him. Crawford never requested a leave of absence in writing or orally before the Committee.
Clay J. Leon III ("Leon"), also a member of the Committee who attended the meetings regarding Crawford, testified at trial. His testimony confirmed that of Branighan. Leon testified that Crawford never requested a leave of absence. Leon did have conversations with Crawford regarding the rule infractions. Crawford would only comment that the cause was personal and would not elaborate.
The Committee also called Crawford to testify at trial. He stated that he is the owner of Lightweight Construction, Inc. ("Lightweight"), an electrical company Crawford organized and incorporated in June of 2000. Through Lightweight, Crawford applied for two permits in 2000 and several permits in 2001 to perform *151 electrical work. The first project was on his home. There were a total of six permits issued during the term of his apprenticeship. Crawford further admitted to doing the electrical work at each of the permits sites; although, he stated that the work was for family and friends. He stated that he received goodwill, but not money for the jobs.
Crawford admitted that Lightweight is not a contributing employer to the Committee or Fund. Further, Lightweight does not have a collective bargaining agreement that would make it a contributing employer.
Crawford testified that he asked Branighan to allow him some time off after he was terminated from Frischhertz Electric to attend to some personal problems. Crawford acknowledged receiving all of the Committee's correspondence and attending the meetings. He also confirmed that he had other discussions with Branighan. Crawford stated that he told the Committee that he thought Branighan had granted him a leave of absence at the meeting in March. However, when confronted with contradictory testimony from his deposition, Crawford acknowledged that he did not ask Branighan for a leave of absence.
Crawford stated that he had not gone to work in five weeks when he was told he had to write a letter requesting a leave of absence. However, he felt that, since he had already been out for five weeks, his leave of absence had begun. He could not understand why the Committee terminated that leave. He decided not to formally ask for a leave of absence because he did not want to repeat the entire fifth year. However, he did admit that he made that decision before he received the letter from the Committee in April allowing him fourteen days to return to work. He also admitted he did not go back to work after receiving that letter.
Crawford admitted that he did not tell the Committee the nature of the personal problems he was facing. Crawford did share some of the nature of his family obligations with Branighan, but would not allow Branighan to speak to the Committee.

LAW
In brief to this Court, Crawford assigns two errors. In the first, he argues the trial court erred in ruling that his motion to annul the judgment for ill practices and fraud was time barred. Crawford filed a motion to vacate the judgment on the basis of fraud and ill practices on December 11, 2006, about a year and a half after the grant of the appeal of the judgments on the merits. The ruling denying that motion was made on July 9, 2007, and was not appealed. Therefore, the judgment that provides the basis for this argument is not before this Court. Thus, we have no jurisdiction to review the judgment. The only judgment in the record that was appealed is the judgment rendered on May 6, 2005 that decided the merits of the breach of contract action.
In the second assignment, Crawford argues the trial court erred in finding a breach of contract. The basis for this assignment is Crawford's assertion that he was granted family medical leave. Therefore, his absence from work was excused and the finding that he was in breach of his contract with the Committee is in violation of the Federal Family Medical Leave Act.[5]
Crawford's argument fails because there is no evidence to support his claim that he asked for and was granted a family medical *152 leave. Crawford admitted there was never such a request made in writing, or orally before the Committee. Further, there is nothing in the record to support his assertion that he had cause to ask for leave. Although in brief to this Court Crawford argued his absence was due to the illness of his ninety-six-year-old mother, he presented no evidence that a family member was having a medical problem at the trial on the merits.[6] He did tell the Committee that he had family issues that required his presence, but, he was clearly reluctant to discuss the nature of those issues. Further, in his deposition, Crawford admitted he did not ask Branighan for a leave of absence.
Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law.[7] The parties to the contract shall be held to full performance of the obligations flowing therefrom.[8] It is well settled that contracts which are clear and unambiguous need no interpretation beyond the words of the agreement themselves. Where the intent of the parties is clear from the contract language, do not lead to absurd consequences, that language should not be disregarded, no further interpretation is necessary.[9]
At the trial on the merits, Crawford acknowledged that he executed the Apprentice Agreement and the Apprentice Scholarship Loan Agreements and understood all of conditions and terms of both agreements. The Apprentice Scholarship Agreements provide that;
The Apprentice agrees and warrants as a condition of receiving the Scholarship Loan that, both during the period of training providing [sic] for in this Agreement and upon completion of the training provided pursuant to this Agreement the Apprentice will neither seek nor accept employment from an employer engaged in, nor become a employer engaged in the Electrical Industry of any other work covered by the Constitution of the International Brotherhood of Electrical Workers, AFL-CIO, ...
... Additionally, the Apprentice warrants and agrees that he shall not obtain an ownership interest in or become an employee of a corporation which is or which becomes an employer engaged in the Electrical Industry or any other work covered by the constitution of the International Brotherhood of Electrical Workers, AFL-CIO....
Further, the Agreement provided that any failure to honor any of the agreement warranties "will constitute an immediate breach of this agreement." The penalty for breach is also set forth in the agreement and provides that upon the breach, "all amounts due and owing on the Scholarship Loan, ... will become immediately due and payable."
Crawford breached the Scholarship Agreement when he started his own company before the end of his training with the Committee. Under the terms of the agreement, his scholarship loan became due and payable at that time.
*153 The Committee has asked this Court to award additional attorney's fees for work done on this appeal. However, the Committee has neither appealed the matter, nor answered the appeal filed by Crawford. Accordingly, this issue has not been properly raised, and we will not consider the Committee's request.[10]
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] A journeyman does not require a license. However, an unlicensed journeyman is prohibited from performing any electrical work without a license. Thus, a journeyman may not actually practice the trade until an electrician's license is obtained.
[2] Crawford paid all necessary costs in July of 2007.
[3] Due to problems of the trial court related to Hurricane Katrina, the record was not lodged in this Court until November 28, 2007.
[4] All of the documentation to support these facts has been introduced into evidence and is available to this Court for review.
[5] 29 U.S.C. §§ 2601-2654 (2000).
[6] Crawford did attach a letter and a one-page document concerning the physician order for Daisy St. Leger. These documents cannot be considered by this Court because they were put into the record in a pleading filed after the appeal was perfected. Further, there is nothing in either the letter or the physician's report to indicate how Daisy St. Leger is related to Crawford.
[7] LSA-C.C. art. 1983.
[8] Aqua Pool Renovations, Inc. v. Paradise Manor Community Club, Inc., 04-119 (La. App. 5 Cir. 7/27/04), 880 So.2d 875.
[9] LSA-C.C. art. 2046.
[10] LSA-C.C.P. art. 2133.